# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ARACELIS RUFFOLO, DOMINIQUE BONSEIGNEUR, and BIANCA FAIRMAN, on behalf of themselves and all other plaintiffs similarly situated, ) ) ) ) ) | |
| Plaintiffs, ) ) | Case No. 1:18-cv-03305 |
| v. ) ) | Honorable Harry D. Leinenweber |
| LASALLE GROUP, INC. and TAMYRA MIRACLE, individually, ) ) ) | |
| Defendants. ) | |

**DEFENDANT THE LASALLE GROUP INC.'S OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION OF A COLLECTIVE
ACTION AND TO ISSUE NOTICE PURSUANT TO 29 U.S.C. §216(B)**

Because Plaintiffs cannot meet their legal burden for conditional certification, Defendant THE LASALLE GROUP, INC. ("LaSalle") requests this Court deny Plaintiffs' Motion for Conditional Certification of a Collective Action and to Issue Notice Pursuant to Section 216(b).

## I.  INTRODUCTION

Plaintiffs seek to conditionally certify a collective action and issue notice to "all persons who have been employed by LaSalle as hourly-wage earning (i.e., non-salaried) employees within the past three years." Doc. 14, p. 3. In support of their Motion, the two remaining Plaintiffs, Bonseigneur and Ruffolo, submitted nearly identical declarations[1] stating that LaSalle maintained a nationwide policy of deducting 30 minutes from each employee's daily pay for a lunch break regardless of whether that employee actually took a break for lunch; LaSalle does not track whether or not an hourly employee takes a lunch break; and there are no other records that show whether or not the employee actually took a break for lunch. Docs. 14-2, 14-3 at ¶¶4-5.

At their depositions, both Plaintiffs directly contradicted their sworn Declaration testimony and conceded that:

- LaSalle requires employees who work during their lunch break to submit a missed punch/missed lunch form to their manager, and LaSalle overrides the automatic lunch deduction in the Paycom system so that employees are paid for those 30 minutes.

- Plaintiffs have no knowledge of any nationwide practice; their claims are specifically limited to lunch periods from May 2017 to November 2017 at the South Barrington location, when they reported to a single manager – Executive Director, Tamyra Miracle.

- Plaintiffs have no personal knowledge of: how any other employees working for any other managers or at any other locations notified LaSalle that they worked during their lunch; how any other managers handled those employees' missed lunch breaks; and whether or not those employees were paid for that time.

---

[1] Bianca Fairman voluntarily dismissed her claims against LaSalle after LaSalle served discovery on her and noticed her deposition. Doc. 24. Accordingly, her declaration must be disregarded. *Swinney v. Amcomm Telecomm., Inc.*, 2013 WL 28063, at *3 n.2 (E.D. Mich. Jan. 2, 2013) (considering only the remaining lead plaintiff's declaration on a motion for conditional certification because the other lead plaintiff voluntarily dismissed his claim and, thus, could not be similarly situated to or represent opt-in plaintiffs).

Further, Plaintiffs are not "similarly situated" to any purported collective. Bonseigneur, as administrative manager at South Barrington, had access to modify time entries in the Paycom system. She modified her own time entries on a regular basis when she worked during lunch – edits that did not require any approval from management. She also modified nearly all of her own and Ruffolo's time entries between August and November 2017. Notably, records showing when Bonseigneur used her security badge to enter the building reflect that she was not in the building during numerous instances when she edited her time records to show she was working. Plaintiffs were actually paid overtime wages for hours they did not work, and LaSalle terminated Plaintiffs' employment for falsifying their time entries in violation of LaSalle's policy.

For these reasons, as detailed below, collective action certification under Section 216(b) is improper and Plaintiffs' Motion should be denied.

## II. FACTUAL BACKGROUND

### A. LaSalle's Business and Wage & Hour Policies

LaSalle designs, develops, builds, manages, and owns Autumn Leaves memory care assisted living communities in multiple states. Each LaSalle community has several different hourly positions, which may include caregivers, nurses, life engagement specialists, life engagement mangers, administrative managers, maintenance managers, housekeepers, cooks, and others depending on the individual community's operations and patient census. These positions report to different managers and work different schedules. **Ex. A** ("Salbego Dec."), ¶5. For example, at the South Barrington location, the administrative manager, the life engagement specialist, the life engagement manager, and the maintenance manager report to the executive director and are expected to work weekdays from 9 a.m. to 5 p.m. Housekeepers and cooks report to the executive director and are expected to work from 9 a.m. to 5 p.m. Caregivers and nurses

2

report to the director of healthcare and work first, second, or third shift to provide round-the-clock patient care. **Ex. B** ("Miracle Dec."), ¶5.

LaSalle's Employee Handbook provides that overtime is paid at one and one half times the employee's regular rate of pay and must be approved in advance by the manager to whom the employee reports. Salbego Dec. ¶6. Working unauthorized overtime is a policy violation subject to disciplinary action up to and including termination. *Id.* ¶7. The Handbook also provides that 30-minute meal breaks are mandatory. *Id.* ¶9. The general process is that full-time hourly employees have 30 minutes deducted from their hours worked each day for their meal break, and LaSalle's policy prohibits hourly employees from performing work during the meal break. *Id*. ¶9-10. However, in those circumstances when an hourly employee does have a lunch break interrupted or a meal break is missed, LaSalle requires the employee to immediately report the interruption to his/her manager for the employee's time to be paid. *Id.* Employees are responsible for accurately reporting their time worked, and providing proper documentation when they forget to punch in or do not take meal breaks, including missed punch/missed lunch forms. *Id.* ¶9. Employees are prohibited from falsifying time entries or recording time for another employee. *Id.* ¶8.

South Barrington employees are required to record their time using the Paycom system. Miracle Dec. ¶6. Each employee has a unique username and password. At the start of the shift, the employees uses a computer located inside the facility to log in to Paycom and punch in. At the end of the shift, the employee uses a computer to log in to Paycom and punch out. *Id.* Further, at South Barrington, only the director of healthcare, the administrative manager, and the executive director have access to modify time entries in Paycom. *Id.* ¶7; **Ex. C** ("Bonseigneur Dep."), 117:21-118:7. If an employee forgets to punch in or out, she must notify her manager and submit a missed punch form so that her manager can correct her time entry in Paycom. Miracle Dec. ¶7.

3

Similarly, if an employee works through or has an interrupted meal break and that break is not otherwise taken later in the day, the employee informs her manager and, in most circumstances, fills out a missed punch/missed lunch form. *Id.* ¶8. Where a manager is informed of the missed or interrupted lunch, the manager (or another employee who can edit Paycom records) then enters a lunch override for that employee in Paycom on that day, and the employee is paid for those 30 minutes. *Id.* ¶9.

> B. **Bonseigneur's Employment with LaSalle.**

On August 22, 2015, Bonseigneur applied for a caregiver position at LaSalle's St. Charles, Illinois location. In her job application, Bonseigneur stated that she had earned her GED, but admitted in her deposition that statement on her employment application was false. Bonseigneur Dep. at 49:19-50:18. Bonseigneur knew that a GED was a required qualification for each of the positions she held with LaSalle. *Id.* at 70, 77.

Bonseigneur initially worked as a caregiver and later a lead caregiver at the St. Charles, Illinois location. *Id.* at 59:5-8. Bonseigneur knew LaSalle's policy required employees to report when they worked during a lunch break so that they would be paid for that time. *Id.* at 113:19-114:13. If she worked during a lunch break, she filled out a missed punch form, turned it into the administrative manager, and was paid for those 30 minutes. *Id.* at 105:17-22. She was never told not to turn in a form when she worked during lunch. *Id.* at 106:10-16.

On May 26, 2016, Bonseigneur transferred to the administrative manager position at South Barrington. *Id.* at 72:7-73:23. In that position, she reported to four different executive directors. *Id.* at 79:3-24. Bonseigneur's job duties were not directly related to patient care. She answered phones, signed for packages, responded to door alarms, conducted tours of the facility, and did general office tasks like filing and copying. *Id.* at 77:24-78:9. Her schedule was generally Monday-Friday, 9 a.m. to 5 p.m., and she worked some weekends. *Id.* at 83:9-22.

As administrative manager, Bonseigneur trained new employees to use Paycom and showed them the forms to fill out when they worked during a lunch break. *Id.* at 154:15-155:5, 159:8-17. She was also responsible for approving other employees' time in Paycom, for entering employees' time when they submitted missed punch forms, and for overriding the automatic lunch deduction in Paycom when employees reported a missed lunch. *Id.* at 110:24-111:9.

Bonseigneur frequently modified her own time entries in Paycom. Her edits were not reviewed or approved by anyone, so she was paid for whatever time she entered in Paycom. *Id.* at 123:1-9. Bonseigneur was able to enter a lunch override or "waived lunch" for herself without needing any manager's permission, and – when she did – she was paid for that time. *Id.* at 117-18. She did so more than <u>20</u> times just while working at South Barrington. *Id.* at 121:24-123:19, 130:7-131:9.

At some point after May 2017, Bonseigneur claims that Executive Director Miracle told her not to override lunch periods in Paycom for five caregivers, and that those five caregivers needed to speak to Miracle directly about overriding the lunch deduction. Bonseigneur does not know whether or not, in each of those instances, Miracle decided to override or not to override the lunch deduction, or how Miracle made such determinations. *Id.* at 146:3-149:20.

### C. Ruffolo's Employment with LaSalle.

On October 16, 2016, Ruffolo was hired as a part-time life engagement specialist at the St. Charles, Illinois location. **Ex. D** ("Ruffolo Dep."), 27:19-28-2. She worked every other weekend for a total of 16 hours every two weeks – never anywhere near 40 hours per week. *Id.* at 26:4-20. She reported to two different executive directors, and her job was to entertain residents of the facility. *Id.* at 25:23-26:24.

On May 15, 2017, Ruffolo transferred to a life engagement manager position at South Barrington. *Id.* at 33:17-34:5. In that position, she had additional authority to hire entertainers,

5

purchase supplies, write the newsletter, and serve as the manager on duty at times. *Id.* at 30:4-14. Her schedule was Monday-Friday, 9 a.m. to 5 p.m., except one day per week when she worked from 10 a.m. to 7 p.m. She also worked one weekend a month for 5 hours per day, and she worked 5-8 hours per month from home on a newsletter. *Id.* at 31:9-33.

Ruffolo signed a written acknowledgement of LaSalle's policy for meal breaks at the start of her employment. *Id.* at 49:1-52:13. When she worked at St. Charles, she punched out when she was taking her lunch break and then she punched back in at the end of her lunch. *Id.* at 38:3-39:23. When she worked at South Barrington, she claims Executive Director Miracle told her not to do that because her lunch break was automatically deducted. *Id.* at 42:3-19.

### D. Bonseigneur Modified A Significant Amount of Her Own Time Entries and Ruffolo's Time Entries.

Bonseigneur admitted that she frequently modified her own time entries in Paycom and then approved her own time so that she would be paid based on those modified time entries. *Id.* at 125:23-128:20. She often logged into Paycom and entered her punches after-the-fact, rather than punching in when she started working and punching out when she finished working each day. Bonseigneur's Paycom records do not reflect the original punches that she made in Paycom each day. They reflect that Bonseigneur would go into Paycom days later and modify her original time entries. In fact, she did that for *every single one* of her time entries between September 4 and October 9, 2017, between October 10 and October 15, 2017, and between October 16 and November 19, 2017. *Id.* at 182:13-187:18; **Ex. E** ("Bazzell Dec."), Ex. 3 at LaSalle_2134-48.

Often, Bonseigneur's time entries in Paycom do not match the times she used her security card to enter the facility—meaning her security badge records show she was not even in the building at the edited start time she belatedly entered in Paycom. For example, on October 28, 2016, her "in" punch in Paycom, which she modified after-the-fact, is 9:00 a.m. on-the-dot. But

6

she did not use her security card to swipe into the building that day until 10:05 a.m. Similarly, for January 22, 2017, her "in" punch, which had been edited, is 8:15 a.m. But according to her security card, she did not enter the building that day until 9:54 a.m. In contrast, on a day when Bonseigneur did not edit her punches, January 21, 2017, Paycom shows she punched in at 10:07 a.m., just minutes after she badged into the building at 10:05 a.m. *Id.* at 175:22-182:12; *Compare* Bazzell Dec. Ex. 1 *with* Ex. 2. Bonseigneur contended that she did not believe the security badge records are accurate, even though she had never seen or reviewed them before. But she admitted that there are numerous instances when she edited her time records to a start time much earlier than her security badge records show she entered the building. Bonseigneur Dep. at 181:17-182:12.

Unlike Bonseigneur, Ruffolo did not have the ability to edit her own time entries after she entered them. *Id.* at 43:18-21. Instead, Bonseigneur was responsible for making edits to Ruffolo's time. Bonseigneur Dep. at 188:1-11. Ruffolo and Bonseigneur worked in the same small office together, and their desks were separated by just a few feet. *Id.* at 188:18-190:12. Ruffolo's Paycom records show that Bonseigneur modified nearly *all* of Ruffolo's time entries between August 1, 2017 and November 16, 2017. Ruffolo Dep. at 63:2-65:1; Bazzell Dec. Ex. 4 at LaSalle_1978-95. Bonseigneur claims that she only edited Ruffolo's time when Ruffolo forgot to punch in and gave Bonseigneur a missed punch form. Bonseigneur Dep. at 192:9-194:1. Bonseigneur further testified that she had no idea if the handwritten time records that Ruffolo would give her were accurate. *Id.* at 192:16-193:1. In contrast, Ruffolo claims she had no idea that Bonseigneur modified her time entries, does not know why her records were edited, and admits she did not turn in a missed punch form almost every day during that time period. Ruffolo Dep. at 65:2-6.

7

### E. Miracle Terminated Plaintiffs' Employment Because They Falsified Time Entries.

Miracle started working for LaSalle in May 2017 as the Executive Director of the South Barrington location. Miracle Dec. ¶3. In November 2017, Miracle learned that Bonseigneur and Ruffolo had been working significant amounts of overtime over the past few months that was not typical for their positions. *Id.* ¶¶10-11; Salbego Dec. ¶¶11-12. For example, Ruffolo's time entries included 20.05 hours of overtime between October 30, 2017 and November 12, 2017. Miracle Dec. ¶11. As another example, Bonseigneur's time entries included 20.99 hours of overtime between October 16, 2017 and October 29, 2017. *Id.*[2] LaSalle paid Plaintiffs for the overtime in Paycom, but neither Bonseigneur nor Ruffolo had asked for or received Miracle's advance approval before working overtime, as required under LaSalle's policy. Miracle Dec. ¶12; Salbego Dec. ¶15.

In fact, Bonseigneur was modifying nearly all of both her own time entries and Ruffolo's time entries in the Paycom system between August 2017 and November 2017 by entering both her and Ruffolo's punch in and punch out times after-the-fact, instead of contemporaneously as required by LaSalle's policy. Miracle Dec. ¶11; Salbego Dec. ¶13. Most egregiously, Bonseigneur had modified Ruffolo's time entries to punch in and punch out on November 7 and November 9, 2017 – days that Ruffolo took off and did not work. Miracle Dec. ¶12; Salbego Dec. ¶14. Their conduct violated LaSalle's policy, which resulted in termination of their employment. Miracle Dec. ¶14; Salbego Dec. at ¶16.

---

[2] Notably, during both of these example pay periods, the time records were heavily edited by Bonseigneur. Ruffolo Dep. at 63:2-65:1; Bazzell Dec. Ex. 2 at LaSalle_2134-48 and Ex. 4 at LaSalle_1978-95.

8

### F. Plaintiffs' Declarations Contain False Statements.

Plaintiffs' deposition testimony uncovered several false statements in the Declarations they submitted in support of their Motion, which go to the core of their request for conditional certification. For example, their Declarations each identically state:

- "LaSalle has a policy of automatically deducting 30 minutes for all of its hourly employees' time regardless of whether or not the employee actually took a lunch break" Docs. 14-2, 14-3 at ¶ 4; and
- "LaSalle does not track whether or not an hourly employee takes a lunch break … there are no other records that show whether or not the employee actually took a break for lunch …." Docs. 14-2, 14-3 at ¶ 5.

Both Plaintiffs admitted that these statements, rendered under oath, were false. Bonseigneur admitted that she filled out missed lunch forms and was paid for lunch when she worked through her break at the St. Charles location, and that she had no issues with missed lunches at South Barrington before Miracle became the Executive Director. Bonseigneur Dep. at 157:11-22, 158:5-9. She also testified that she could enter a "waived lunch" code for herself at South Barrington, and did that on many occasions, resulting in her being paid for her lunch period. *Id.* at 121:24-123:19. According to Bonseigneur, how employees were compensated for missed or interrupted lunch breaks varied by the executive director who was in charge and the *only* executive director she claimed was doing the lunch process improperly was Miracle. *Id.* at 158:15-159:3.[3] Similarly, Ruffolo admitted that when she handed in a document stating that she worked through her lunch break, then she would be paid for those 30 minutes. Ruffolo Dep. at 79:14-19.

Plaintiffs' Declarations also state that:

- they observed other hourly employees who were unable to take lunch breaks and other hourly employees who did not take a 30-minute break to eat lunch, Docs 14-2, 14-3, ¶ 11; and

---

[3] Bonseigneur also testified that LaSalle generally did not have any reason to know when she worked through lunch, and Ruffolo testified that she was never instructed not to submit a form to record a missed lunch or not to take a later lunch. Bonseigneur Dep. 106:17-19, 123:1-19; Ruffolo Dep. at 87:11-17.

9

- other employees reported to them that they were not permitted to take lunch breaks. Docs. 14-2, 14-3, ¶ 12.

Again, Plaintiffs' testimony at deposition shows these statements were false. Bonseigneur filled in or assisted with training at facilities in Arlington Heights and Vernon Hills, Illinois and in Wisconsin on a few limited occasions. *Id.* at 160:6-162:10. Bonseigneur confirmed that Arlington Heights' employees filled out a form when they worked during lunch and their lunch break would be overridden in Paycom. She admitted she has no personal knowledge of how any other LaSalle locations handled employees' missed lunch breaks. *Id.* at 163:24-164:20. Similarly, Ruffolo testified that Miracle told her and some caregivers to sit with residents to help them eat their lunches, but Miracle did not tell them that they could not take a lunch break later on their own. *Id.* at 85:12-87:17. Ruffolo also admitted she has no knowledge of whether caregivers actually took a lunch break, and she has no knowledge of any other employees at South Barrington or any other location who worked during lunch and were not paid. *Id.* at 93:14-95:13.

### III. ARGUMENT

#### A. Plaintiffs Fail to Provide Evidence Based on Personal Knowledge to Show a Common Unlawful Policy.

Pursuant to 29 U.S.C. § 216(b), an action for overtime under the FLSA may be brought "by any one or more employees for and on behalf of himself or themselves and others similarly situated." *Id.* To prevail on a motion for conditional certification, plaintiffs must make a "modest factual showing" that the putative class were "victims of a common policy or plan that violated the law." *Flores v. Lifeway Foods, Inc.*, 289 F.Supp.2d 1042, 1045 (N.D. Ill. 2003).

Allegations of individual FLSA violations are insufficient to establish an unlawful company-wide policy for purposes of conditional certification. *Id.* at 1046 ("It is the opinion of the [c]ourt that a demonstration of [the defendant's] payment practice concerning two out of fifty employees (four percent of [d]efendant's workforce) does not rise to the level of a common policy

10

or plan by [the defendant] that violated the FLSA."). Further, a plaintiff cannot satisfy her burden with "unsupported assertions." *Id.* Rather, courts require a plaintiff to support her claims with specific facts. *See Boyd v. Alutiiq Global Solutions, LLC*, 2011 WL 3511085, at *5 (N.D. Ill. Aug. 8, 2011) (*citing Adair v. Wis. Bell, Inc.*, 2008 WL 4224360 (E.D. Wis. Sept. 11, 2008) (rejecting statements in plaintiffs' declarations that contain inadmissible hearsay and are not based on personal knowledge of the declarants); *Mares v. Caesars Entm't, Inc.*, 2007 WL 118877, at *3 (S.D. Ind. Jan. 10, 2007) ("[A]lleged conversations with unidentified persons is insufficient to establish personal knowledge as to the policies and practices in effect.").

In this case, Plaintiffs merely assert LaSalle deducts 30 minutes for a lunch break each day. But, in their depositions they conceded that policy was not absolute, and that employees were paid when they worked during a lunch break. In fact, when employees submitted a form stating they worked during lunch or otherwise informed management, LaSalle paid them for their lunch break. Bonseigneur admitted that when employees provided her forms stating they worked during lunch, she entered an override in Paycom to pay them for that time – except for a narrow timeframe after May 2017 when Executive Director Miracle allegedly told Bonseigneur not to override lunch breaks for a certain number of caregivers (although Bonseigneur admitted she continued to override lunch breaks for *herself* during this timeframe). Even then, Bonseigneur does not know how or whether Miracle decided to handle those issues. Bonseigneur Dep. at 149. Bonseigneur has no knowledge of how lunch breaks were handled for any other employees at other locations, including whether they submitted forms stating they worked through lunch, or whether LaSalle failed to pay them. *Id.* at 163:24-164:20. Even at the South Barrington facility, the sole location where Bonseigneur contended there were issues with the lunch break process, she testified that she did not know what the lunch process was for employees in various departments in that facility, such as line cooks, maintenance, and housekeeping employees. *Id.* at 165:3-166:1, 168:14-22.

11

Ruffolo, for her part, does not know whether caregivers took lunch breaks aside from the times they assisted residents to eat their lunches, and does not know whether any other employees at the South Barrington or any other location worked during lunch and were not paid for that time. Ruffolo Dep. at 93:14-95:13.

In short, Plaintiffs have utterly failed to set forth "a common policy or plan that *violated the law*." *Flores*, 289 F. Supp. 2d at 1045 (emphasis added). This is because deducting meal breaks is not unlawful. *Creal v. Group O, Inc.*, 155 F. Supp. 3d 831, 841 (N.D. Ill. 2016) (meal deduction policy does not violate the FLSA and granting decertification where several plaintiffs knew of employer's lawful policies requiring them to take their full meal periods); *Camilotes v. Resurrection Health Care Corp.*, 286 F.R.D. 339, 350 (N.D. Ill. 2012) ("common policy of automatically deducting 30 minutes from employees' shifts . . . in and of itself, does not violate the FLSA"); *Frye v. Baptist Memorial Hosp.*, 2010 WL 3862591, at *7 (W.D. Tenn. Sept. 27, 2010) ("requiring its employees to take affirmative action to ensure payment for time worked during meal breaks, by itself, does not support a common theory of statutory violations"); Wage and Hour Div., U.S. Dep't of Labor Fact Sheet No. 53, The Health Care Industry and Hours Worked (July 2009) (automatic meal break deduction is lawful). Indeed, both Bonseigneur and Ruffolo admitted they were aware of the policy to get paid for missed lunches, and followed it.

Moreover, for these same reasons, Plaintiffs' reliance on this Court's opinion in *Muir v. Guardian Heating and Cooling Service, Inc.* is misplaced. Unlike in *Muir*, Plaintiffs in this case gave sworn testimony that demonstrates that neither LaSalle's policy nor its practice is unlawful, and that Plaintiffs do not know if any other employees worked during lunch breaks or had their lunch breaks interrupted and were not paid for that time. Plaintiffs merely speculate that Miracle refused to override the automatic lunch deduction for a handful of caregivers at the South Barrington location. Even if that were true, the allegedly improper directions from one single

12

manager at one location does not demonstrate a common scheme or policy warranting conditional certification of a collective of all hourly employees nationwide. That lack of evidence is especially striking here, where the only two remaining Plaintiffs shared a single small office in a single location (South Barrington).

### B. Plaintiffs Cannot Establish that Any Individuals They Seek to Represent are Similarly-Situated.

Conditional certification is improper where, as here, individualized, fact-intensive determinations are required. *Steger v. Lifetime Fitness, Inc.*, 2016 WL 245899 (N.D. Ill. Jan. 21, 2016) (denying conditional certification because the "highly individualized inquiries which will be required would substantially eliminate the judicial efficiency, and the resulting benefit to the parties, traditionally attained through the collective treatment of claims."). In *Steger*, the court denied conditional certification because the proposed class' job duties varied, and it "was impacted, not by a uniform [policy], but rather by the individual actions of specific department heads acting contrary to corporate policy, as moderated by each employee's individual decisions." *Id.* at *13. Similarly, here, the particularized inquiry of whether an employee works during lunch and how the employee receives manager approval is not suitable for collective treatment. *See, e.g.*, *Walker v. Health and Hosp. Corp. of Marion Cnty.*, 2016 WL 7179370, at *12 (S.D. Ind. Dec. 9, 2016) (denying conditional certification where plaintiffs failed to show that other plaintiffs were not requesting to be paid for interrupted meal breaks, or that the company should have known they were working during meal breaks and not requesting pay).

This case is rife with unique issues that distinguish Bonseigneur and Ruffolo from any other allegedly "similarly situated" employees. Neither Bonseigneur nor Ruffolo held job duties

13

similar to all other hourly employees nationwide.[4] During the time period at issue, from May 2017 onward, Bonseigneur was the administrative manager, who, unlike any other hourly employees, had access to override her own lunch breaks and other employees' lunch breaks. Bonseigneur Dep. at 109-11, 117-18. Ruffolo was the only life engagement manager at South Barrington and neither Bonseigneur nor Ruffolo know how other supervisors in other locations addressed employees' missed lunch breaks or even whether employees in other locations actually miss lunch breaks in the first place. *Id.* at 163:24-164:20; Ruffolo Dep. at 93:14-95:13. That Bonseigneur and Ruffolo are not "similarly situated" to any particular group is further amplified by their admissions that they submitted false statements in their Declarations on the threshold issue in this case—lunch breaks. *See, e.g.*, *Luksza v. TJX Companies, Inc.*, 2012 WL 3277049, at *10-11 (D. Nev. Aug. 8, 2012) (denying conditional certification where named plaintiffs "admitted during their depositions that several portions of their declarations were incorrect" and evidence adduced in discovery suggested plaintiffs were not similarly-situated to potential opt-ins).

For these reasons, Plaintiffs' Motion should be denied in its entirety.

### C. Only the South Barrington Location after May 2017 is at Issue.

While conditional certification should be denied in its entirety for the reasons cited above, to the extent that the Court disagrees, any notice should be limited to employees reporting to Executive Director Miracle at the South Barrington location after May 2017, the sole period of time during which Plaintiffs assert they were not paid appropriately when they worked during

---

[4] While not part of the request for conditional certification, in her deposition Bonseigneur claimed she worked Sunday nights to enter time entries and approve other employees' entries in Paycom – a task unique to her administrative manager position. Bonseigneur Dep. at 197:7-198:7. Bonseigneur stated she did not record the time she spent on that task in Paycom, but was aware of LaSalle's policy requiring her to do so. *Id.* at 198:12-200:6. Ruffolo worked from home in June 2017 and August 2017 for 8 hours per month on the newsletter – a task unique to her life engagement manager position. Ruffolo Dep. at 30:14, 32:9-33:6, 106:5-15. Ruffolo did not record that time in Paycom, but she submitted a piece of paper to Miracle, and Ruffolo does not know one way or another whether she was paid for that time. *Id.* at 106:16-109:1. This testimony shows that Bonseigneur's and Ruffolo's claims are unique to their positions at South Barrington.

14

lunch breaks. *See, e.g., Solsol v. Scrub, Inc.*, 2015 WL 1943888 at *4 (N.D. Ill. 2015) (limiting conditional certification to a single location because "[p]laintiffs … have not presented any evidence concerning the … employees who worked at [other] locations and therefore have failed to make any showing that the named plaintiffs are similarly situated to those individuals."); *Brand v. Comcast Corp.*, 2012 WL 4482124 (N.D. Ill. 2012) (same); *Berry v. Quick Test, Inc.*, 2012 WL 1133803, at *5-7 (N.D. Ill. 2012) (same). Again, Plaintiffs failed to offer information sufficient to support FLSA claims at any other location or for any manager other than Miracle. Indeed, Bonseigneur expressly stated Miracle was the *only* manager at issue with respect to her FLSA claims. *Id.* at 158:15-159:3.

### D. Plaintiffs' Proposed Notice is Deficient in Multiple Respects.

Even if Plaintiffs had met their burden to show conditional certification is warranted, which they have not, the notice they have proposed is improper for the following reasons.[5]

- The notice fails to state that the Court has not yet ruled on Plaintiffs' allegations. *See Fields v. Bancsource, Inc.*, 2015 WL 3654395, at *5 (N.D. Ill. 2015) (holding the notice should reflect that the Court takes no position on the merits of the case); *Kelly v. Bluegreen Corp.*, 256 F.R.D. 626, 631 (W.D. Wis. 2009) (adding defendant's denial of liability to the language of the notice).

- The notice fails to clarify that the lawsuit seeks only pay for time they worked when lunch breaks were missed or interrupted, and not any other allegedly unpaid wages.

- The notice fails to notify opt-in plaintiffs that they may have to participate in discovery, provide documents, appear for a deposition and testify at trial. *See Fields*, 2015 WL 3654395, at *5 (holding that, to fully inform putative class members, the notice must state: "[i]f you choose to opt in, you may be required to provide information or documents, appear for a deposition, testify at trial, or otherwise participate in this action").

- Any notice should be limited to hourly employees who worked at the South Barrington, Illinois location from May 2017 onward—the only timeframe and location for which Bonseigneur and Ruffolo claim any violations of the FLSA occurred.

---

[5] Should the Court grant conditional certification, LaSalle requests that the parties meet and confer regarding the notice and submit short briefing to the Court for any matters on which they cannot agree.

**IV.  CONCLUSION**

Wherefore, Defendant The LaSalle Group, Inc. respectfully requests this Court deny Plaintiffs' Motion for Conditional Certification of a Collective Action and to Issue Notice Pursuant to Section 216(b), and grant such other relief as the Court deems just and proper.

DATED:   November 13, 2018.                                    Respectfully submitted,

                                                               By:   /s/ Colleen G. DeRosa
                                                                     One of the Attorneys for Defendant
Colleen G. DeRosa (ARDC No. 6301589)                                 **THE LASALLE GROUP, INC.**
**OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.**
155 North Wacker Drive, Suite 4300
Chicago, IL 60606
Telephone:  312.558.1220
*colleen.derosa@ogletree.com*

Michael D. Ray (ARDC No. 6285109)
**OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.**
201 South College Street, Suite 2300
Charlotte, NC 28244
Telephone:  704.342.2588
*michael.ray@ogletree.com*

## **CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on November 13, 2018, the foregoing ***Defendant's Opposition to Plaintiffs' Motion for Conditional Certification of a Collective Action and to Issue Notice Pursuant to 29 U.S.C. §216(B)*** was filed electronically with the Clerk of Court using the ECF system, and was served via electronic transmission upon:

>David J. Fish, Esq.
>Kimberly Hilton, Esq.
>John Kunze, Esq.
>**THE FISH LAW FIRM**
>200 East 5th Avenue
>Suite 123
>Naperville, IL 60563
>*dfish@fishlawfirm.com*
>*khilton@fishlawfirm.com*
>*kunze@fishlawfirm.com*

>***Attorneys for Plaintiff***

/s/  Colleen G. DeRosa

36281883.1