IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ARACELIS RUFFOLO and
DOMINIQUE BONSEIGNEUR,
individually and on behalf
those similarly situated,

                Plaintiffs,

      v.

LaSALLE GROUP, INC. and
TAMYRA MIRACLE, Individually,

                Defendants.

Case No. 18 C 3305

Judge Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Before the Court is Plaintiffs' Motion for Conditional Certification of a Collective Action (Dkt. No. 14) (the "Motion"). For the reasons stated herein, the Motion is granted in part and denied in part.

## I.  BACKGROUND

This case concerns allegations of wage theft arising from Plaintiffs' period of employment with Defendant LaSalle Group, Inc. ("LaSalle"). LaSalle is a corporation that owns and operates assisted living facilities throughout the United States, including several in this judicial district. (Compl. ¶ 2.) Defendant Tamyra Miracle ("Miracle") is the Executive Director of LaSalle's South Barrington, Illinois location. (Compl. ¶ 3.) Plaintiff Dominique

Bonseigneur ("Bonseigneur") worked for LaSalle first as a caregiver, and later as an administrator. (Bonseigneur Decl. ¶ 2, Ex. 2 to Pls.' Mot., Dkt. No. 14.) Bonseigneur worked primarily at LaSalle's St. Charles and South Barrington, Illinois locations. (*Id.*) Plaintiff Aracelis Ruffolo ("Ruffolo") worked for LaSalle as a life engagement specialist, and later as a life engagement manager, scheduling and overseeing activities for the residents. (Ruffolo Decl. ¶ 3, Ex. 3 to Pls.' Mot.) Like Bonseigneur, Ruffolo worked at both the St. Charles and South Barrington locations. (*Id.* at ¶ 2.)

On May 5, 2018, Plaintiffs, along with a third individual who has since voluntarily dismissed her claims without prejudice, filed suit against Defendants. Plaintiffs allege that LaSalle automatically deducts 30 minutes from hourly workers' daily pay for a required lunch break, and this deduction is taken regardless of whether the worker is actually able to take a 30-minute break. (Compl. ¶ 10, 12.)

Plaintiffs bring three counts against Defendants: (1) a putative collective action pursuant to 29 U.S.C. § 216(b) against LaSalle for violating the Fair Labor Standards Act (FLSA), (2) a putative class action pursuant to Fed. R. Civ. P. 23 against LaSalle for violating the Illinois Minimum Wage Law (IMWL), and (3) individual claims by Ruffolo and Bonseigneur against LaSalle and

- 2 -

Miracle for defamation. Only the FLSA count is relevant for the instant Motion. Plaintiffs assert that LaSalle violated the FLSA's minimum and overtime wage provisions by not paying them for missed or interrupted lunch breaks. (Compl. ¶ 22.) Plaintiffs propose the following definition for their FLSA collective: all persons who have been employed by LaSalle as hourly wage earning (*i.e.,* non-salaried) employees for the three years preceding the issuance of the notice. (Pls.' Mot. at 3, 8.)

Plaintiffs now move the Court to order conditional certification of a representative collective action pursuant to the FLSA. Within that Motion, Plaintiffs also request that the Court order court-facilitated notice in their proposed form, order LaSalle to produce a list of all potential opt-in plaintiffs, and authorize Plaintiffs to send notice to all potential opt-ins.

## II.  **LEGAL STANDARD**

Under the FLSA, employers must pay their hourly workers a minimum wage and overtime wages for each hour worked in excess of 40 hours per week. 29 U.S.C. §§ 206, 207. The FLSA authorizes employees to bring a "collective action" against an employer for violations of the FLSA's minimum wage and overtime provisions, on behalf of themselves and other employees "similarly situated." 29 U.S.C. § 216(b). FLSA lawsuits do not proceed as traditional Rule 23 class actions. Instead, they proceed as "opt-in representative

actions," or collective actions. *Schaefer v. Walker Bros. Enters.*, 829 F.3d 551, 553 (7th Cir. 2016); 29 U.S.C. § 216(b). A district court has wide discretion to manage collective actions. *Alvarez v. City of Chicago,* 605 F.3d 445, 449 (7th Cir. 2010) (citation omitted).

The Seventh Circuit has not articulated a procedure for determining whether an FLSA lawsuit should proceed as a collective action. Nor has it set forth criteria for determining whether employees are "similarly situated." *Pfefferkorn v. PrimeSource Health Grp., LLC*, No. 17-CV-1223, 2019 WL 354968, at *2 (N.D. Ill. Jan. 29, 2019). Courts in this District, however, have used a two-step process. *Id*. The first step is "conditional certification," in which a plaintiff must make a "modest factual showing" that she and similarly situated employees were "victims of a common policy" that violated the FLSA. *Id*. At this step, Plaintiffs need only clear a "low bar" to meet their burden. *Id*. (citation omitted); *Howard v. Securitas Security Services, USA Inc.*, No. 08 C 2746, 2009 WL 140126, at *5 (N.D. Ill. Jan. 20, 2009) ("[T]he court looks for no more than a 'minimal showing' of similarity."); *Rottman v. Old Second Bancorp, Inc.*, 735 F. Supp. 2d 988, 990 (N.D. Ill. 2010) (finding that the similarly situated standard is a liberal one, which "typically results in conditional certification" of a collective) (citation omitted).

After parties' complete discovery, the court conducts the second, more stringent step of the inquiry. *Rottman,* 735 F. Supp. 2d at 990. At that point the court knows which employees will be part of the class and it must "reevaluate the conditional certification to determine whether there is sufficient similarity between the named and opt-in plaintiffs to allow the matter to proceed to trial on a collective basis." *Id.* (citation omitted). The second step imposes more demanding requirements on plaintiffs, *id.,* but is not yet relevant at this stage.

### III.  DISCUSSION

LaSalle argues that Plaintiff's Motion should be denied because: (1) Plaintiffs failed to provide sufficient evidence to show a common unlawful policy; (2) Plaintiffs are not similarly situated to the putative collective; (3) Plaintiffs' putative collective is over-broad; and (4) Plaintiffs' proposed notice form is improper. The Court will address each argument in turn.

### A.  Common Policy or Practice

A successful motion for conditional certification must make a "modest factual showing" that Plaintiffs and their putative collective were victims of a common policy or plan that violated the law. *Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 15-CV-10447, 2016 WL 1043429, at *2 (N.D. Ill. Mar. 16, 2016). Plaintiffs can make this showing through affidavits, declarations, deposition

testimony, or other documents. *Id*. LaSalle contends that Plaintiffs failed to meet this burden for several reasons.

First, LaSalle claims that Plaintiffs merely alleged individual FLSA violations, rather than an unlawful company-wide policy. The Court disagrees. Both Ruffolo and Bonseigneur submitted declarations that allege an unlawful company-wide policy: automatically deducting 30 minutes from all its hourly employees' time, regardless of whether or not the employee actually takes a lunch break. (*See* Ruffolo Decl. ¶ 5-6; Bonseigneur Decl. ¶ 4-5.) Both Bonseigneur and Ruffolo said that they were often unable to take a lunch breaks, and that 30 minutes were still deducted from their pay when they worked through lunch. (Bonseigneur Decl. ¶ 10; Ruffolo Decl. ¶ 8-10.) Bonseigneur, as a former LaSalle administrator, was also able to allege specific facts about the company-wide nature of the allegedly unlawful policy. (Bonseigneur Decl. ¶ 6-13.) Furthermore, Plaintiffs' declarations allege personal knowledge of other employees who were forced to work through unpaid lunch breaks. (*See* Ruffolo Decl. ¶ 11-12 ("I observed other hourly employees who were unable to take lunch breaks. I also observed other hourly employees who did not take a 30-minute break to eat lunch. I talked to other hourly employees at both locations where I worked about whether or not they were paid for all hours they worked. Many employees reported

to me that they too had their pay deducted but were not permitted to take a lunch break or were not allowed to take the full 30 minutes."); Bonseigneur Decl. ¶ 11-13 (declaring same).) Furthermore, Bonseigneur stated that as an administrator, she was privy to company-wide discussions and trainings that informed her understanding of an unlawful company-wide lunch deduction policy. (Bonseigneur Decl. ¶ 6-8, 12-13.) Thus, LaSalle's first argument fails.

Second, LaSalle asserts, correctly, that merely deducting an hourly worker's time for meal breaks does not violate the FLSA. *See Camilotes v. Resurrection Health Care Corp.,* 286 F.R.D. 339, 350 (N.D. Ill. 2012). LaSalle contends that its automatic lunch deduction policy is lawful because it provides a mechanism by which hourly employees can petition to override the deduction if their lunch break is interrupted. LaSalle points to its Employee Handbook to support this position. LaSalle's written policy regarding automatic lunch deductions is as follows:

> Employees will be provided a meal break of either 30 minutes or 60 minutes. . . . The meal period will not be included in the total hours of work per day and is not compensable. Hourly community employees will have their meal period automatically deducted each shift and are prohibited from performing any compensable work during a meal break. If an employee's meal break is interrupted, the employee must immediately report the interruption to their manager in order for the employee's time to be adjusted as paid time.

(Employee Handbook at 26-27, Ex. 1 to Ex. A to Defs.' Resp., Dkt. No. 28.)

However, Plaintiffs do not claim that LaSalle's policy violates the FLSA merely because it features an automatic deduction. Rather, Plaintiffs claim that regardless of LaSalle's written policy, *in practice* LaSalle was not paying them and other hourly workers for working through their automatic lunch breaks. (*See, e.g.,* Ruffolo Decl. ¶ 8 ("I told my supervisors many times that I was unable to take a lunch break on any given day. Despite my notifications to my supervisors, my pay was still docked 30 minutes each day.").) The fact that a company has a written policy "does not defeat conditional certification when a plaintiff provides countervailing evidence" of a practice that violates the FLSA. *See Russell v. Illinois Bell Tel. Co.*, 575 F. Supp. 2d 930, 935 (N.D. Ill. 2008) (citation omitted). Accordingly, LaSalle's argument fails.

Third, LaSalle argues that Plaintiffs cannot establish their claims using "unsupported assertions" and hearsay. Hearsay is an out-of-court statement offered for the truth of the matter asserted, and it is generally inadmissible. *See Jordan v. Binns*, 712 F.3d 1123, 1126 (7th Cir. 2013); F. R. EVID. 802. Plaintiffs' declarations do contain allegations that would be inadmissible if they were offered to prove the truth of the matter asserted. (*See,*

*e.g.*, Ruffolo Decl. ¶ 12 ("Many employees reported to me that they too had their pay deducted but were not permitted to take a lunch break. . .").) Courts in this District have taken different stances on whether hearsay is admissible for the purpose of step one conditional certification. *Compare Boyd v. Alutiiq Glob. Sols., LLC*, No. 11-CV-0753, 2011 WL 3511085, at *5-6 (N.D. Ill. Aug. 8, 2011) (finding that hearsay evidence is inadmissible to support a motion for conditional certification), *with Pieksma v. Bridgeview Bank Mortg. Co., LLC*, No. 15 C 7312, 2016 WL 7409909, at *3 (N.D. Ill. Dec. 22, 2016) (holding that hearsay evidence is admissible to support a motion for conditional certification). Courts that have denied motions to strike hearsay evidence from conditional certification declarations reason that "a strict application of the Federal Rules of Evidence does not comport with the court's understanding of relative evidentiary burdens imposed under the two-stage certification approach," and that the "most reasonable approach to the respective evidentiary burdens of the plaintiff during the two stages is one that requires a stricter standard of proof in the second stage." *Pieksma v. Bridgeview Bank Mortg. Co., LLC*, No. 15 C 7312, 2016 WL 7409909, at *3 (N.D. Ill. Dec. 22, 2016) (citing *Howard v. Securitas Sec. Servs., USA Inc.*, No. 08 C 2746, 2009 WL 140126, at *3 (N.D. Ill. Jan. 20, 2009)). This Court finds *Pieksma* persuasive. Given that the Court

need not consider the merits of the claims or engage in fact-sensitive inquiries for step one conditional certification, *Russell*, 575 F. Supp. 2d at 935, the Court will not require a strict application of the hearsay rule at this stage. However, Plaintiffs must submit admissible evidence at the second stage of certification. *Howard*, 2009 WL 140126, at *3. Accordingly, LaSalle's hearsay argument is unavailing.

Finally, LaSalle contends that Plaintiffs' statements in deposition disprove their FLSA claims. This argument warrants a brief background on the extent of discovery in this case. After Plaintiffs filed their Motion, LaSalle requested limited discovery for the purpose of opposing that Motion. The Court granted LaSalle's request; LaSalle was then able to depose Bonseigneur and Ruffolo prior to filing their response to Plaintiffs' motion. LaSalle attached excerpts from those depositions to its response. (*See* Bonseigneur Dep., Ex. C to Defs.' Resp.; Ruffolo Dep., Ex. D to Defs.' Resp.) LaSalle also included two declarations of its own to its Response. (*See* Salbego Decl. and Miracle Decl., Ex. A and B to Defs.' Resp.) Parties have exchanged limited written discovery. (*See* Bonseigneur Answers to First Interrog., Ex. A to Defs.' Resp., Dkt. No. 18; LaSalle's Answers to First Interrog., Ex. 1 to Pls.' Reply, Dkt. No. 30.) Plaintiffs did not have the chance to take any of LaSalle's depositions before filing their

Motion or Reply. LaSalle now claims that Plaintiffs' depositions prove that their declarations contain false statements. And according to LaSalle, Plaintiffs' depositions "demonstrate[] that neither LaSalle's policy nor its practice is unlawful, and that Plaintiffs do not know if any other employees worked during lunch breaks…" (Defs.' Resp. at 12.)

However, at this initial stage, the Court "does not make merits determinations, weigh evidence, determine credibility, or specifically consider opposing evidence presented by a defendant." *Briggs v. PNC Fin. Servs. Grp., Inc.*, No. 15-CV-10447, 2016 WL 1043429, at *2 (N.D. Ill. Mar. 16, 2016) (citing *Bergman v. Kindred Healthcare, Inc.*, 949 F. Supp. 2d 852, 855–56 (N.D. Ill. 2013)). LaSalle's arguments regarding Plaintiffs' deposition testimony are essentially attacks on Plaintiffs' credibility as witnesses. *Id*. The Court does not assess witness credibility at this stage. *Id*. This lenient standard is supplanted by a more rigorous examination standard only if the plaintiff has been allowed more extensive discovery. *Bergman*, 949 F. Supp. 2d at 856; *Nicks v. Koch Meat Co.*, 265 F. Supp. 3d 841, 850-51 (N.D. Ill. 2017) (declining to apply more rigorous examination standard because defendants had not produced a list of potential claimants, parties had not engaged in discovery with the potential class members, and parties had not conducted extensive discovery on the "similarly situated" issue).

- 11 -

Plaintiffs have yet to conduct such "extensive discovery" in this case. To the extent that LaSalle's evidence suggests that the alleged policy or practice is not a FLSA violation, the resolution of that factual dispute is appropriately left to a motion for decertification—particularly because Plaintiffs have not yet had a chance to depose any of LaSalle's witnesses. *See Bitner v. Wyndham Vacation Resorts, Inc.*, 301 F.R.D. 354, 360 (W.D. Wis. 2014).

Moreover, LaSalle failed to produce a complete record of the depositions upon which they ask the Court to judge Plaintiffs' credibility. LaSalle provided only excerpts of the depositions and cite to brief comments within those excerpts as proof that Plaintiffs contradicted their declarations. This is inappropriate and insufficient at this stage. *See Koch Meat Co.*, 265 F. Supp. 3d at 850 (N.D. Ill. 2017). If the Court were to engage in the sort of rigorous examination of the facts that LaSalle urges, it would need a complete record to do so.

Plaintiffs have made the required "modest factual showing" of a common unlawful policy or practice. *See Briggs*, 2016 WL 1043429, at *2. Accordingly, the Court proceeds to the "similarly situated" inquiry.

## B. Similarly Situated

LaSalle contends that Plaintiffs cannot establish that any individuals they seek to represent are similarly situated because their claims require individualized, fact-intensive inquiries. LaSalle claims that the "particularized inquiry" of whether an employee worked during lunch and whether the employee received a deduction override is not suitable for collective treatment. (Defs.' Resp. at 13.) To support this claim, LaSalle cites to another FLSA automatic meal time deduction case, *Walker v. Health & Hospital Corporation of Marion County*, No. 1:15-cv-01978, 2016 WL 7179370 (S.D. Ind. Dec. 9, 2016). *Walker* held that collective certification was not appropriate because Plaintiffs did not present adequate evidence that they were similarly situated to other potential plaintiffs. *Id.* at *12. However, the *Walker* court used a different standard—it "collapse[d] the two stages" of FLSA collective certification analysis because "substantial discovery" had taken place. *Id.* at *9. Furthermore, *Walker* held that the plaintiffs did not present sufficient evidence because they did not allege that the defendant employer violated the FLSA by not compensating employees for that time. *Id.* Plaintiffs' declarations do not suffer from this deficiency. (*See, e.g.*, Ruffolo Decl. ¶ 12 ("I talked to other hourly employees at both locations where I worked about whether or not they were paid for all hours they

- 13 -

worked. Many employees reported to me that they too had their pay deducted but were not permitted to take a lunch break or were not allowed to take the full 30 minutes.") Thus, *Walker* is inapposite. Ultimately, given the factual issues involved, the question of whether other LaSalle employees were in fact working uncompensated during lunch is more appropriately addressed at the decertification or summary judgment stage. *See Koch Meat Co.*, 265 F. Supp. 3d at 855. Accordingly, this argument fails.

LaSalle next argues that Plaintiffs are not similarly situated because "neither Bonseigneur nor Ruffolo held job duties similar to all other hourly employees nationwide." (Defs.' Resp. at 13-14.) It is true that Bonseigneur and Ruffolo had different roles with different responsibilities. Ruffolo's role was largely focused on resident care, as she was responsible for scheduling and executing activities for the residents. (Ruffolo Decl. ¶ 3.) Bonseigneur's duties included both resident care and administrative tasks, as she worked first as a caregiver and later as an administrator. (Bonseigneur Decl. ¶ 2.) And as an administrator, Bonseigneur was able to access LaSalle's timekeeping system, Paycom. (Bonseigneur Dep. 131:11-14; 145:1-149:20.) She could enter waived lunch codes when employees presented the proper paperwork and her Executive Director, Defendant Miracle, approved. (*Id.*) LaSalle insists that these

differences set Plaintiffs too far apart from other hourly workers
to be situated similarly to them.

However, Plaintiffs "do not have to show that the potential
[collective] members have *identical* positions for conditional
certification to be granted; [P]laintiffs can be similarly
situated for purposes of the FLSA even though there are
distinctions in their job titles, functions, or pay." *Jirak v.
Abbott Laboratories, Inc.*, 566 F. Supp. 2d 845, 848-49 (N.D. Ill.
2008). *See also Muir v. Guardian Heating & Cooling Services, Inc.*,
No. 16 C 9755, 2017 WL 959028, at *8 (N.D. Ill. Mar. 13, 2017)
("[P]laintiffs at the conditional certification stage need not
show identical positions of potential opt-ins."). As this Court
has previously noted, there is "wide consensus" in this District
that arguments about dissimilarities in the collective are more
appropriately decided at step two, after the composition of the
class is known and full discovery has taken place. *Id.* Here, both
Plaintiffs were full-time hourly employees of LaSalle. And LaSalle
admits that its hourly workers are all subject to the same
automatic lunch deduction. (Defs.' Resp. at 3.) LaSalle's rigorous
comparison of day-to-day job responsibilities is inappropriate at
the conditional certification stage. *Briggs*, 2016 WL 1043429, at
*6 (citation omitted); *Petersen v. Marsh USA, Inc.*, 2010 WL 5423734
at *7 (finding rigorous comparisons of daily responsibilities

- 15 -

inappropriate). Thus, the Court will treat LaSalle's hourly workers as similarly situated despite some variation in their job duties.

As a final note, LaSalle also argues that Plaintiffs are not similarly situated to any group because they "submitted false statements in their Declarations on the threshold issue in this case." (Defs.' Resp. at 14.) LaSalle again cites to an out of district case using a different legal standard to support this contention, *Luksza v. TJX Companies, Inc.*, No. 2:11-CV-01359, 2012 WL 3277049, at *9-10 (D. Nev. Aug. 8, 2012). In that case, the court applied an "intermediate" standard because parties conducted "extensive discovery" before the motion for conditional certification—defendant had deposed seven named and opt-in plaintiffs and plaintiffs had deposed four of defendant's corporate representatives. That case does not apply. As the Court has already explained, the lenient "modest factual standard" applies at the conditional certification stage, *Pfefferkorn v. PrimeSource Health Grp., LLC*, No. 17-CV-1223, 2019 WL 354968, at *2 (N.D. Ill. Jan. 29, 2019), thus *Luksza* is not persuasive authority. Accordingly, the Court need not delve into the factual disputes stemming from Plaintiffs' depositions at this stage. *See Fields v. Bancsource, Inc.*, No. 1:14-CV-7202, 2015 WL 3654395, at *4 (N.D. Ill. June 10, 2015). Plaintiffs' declarations provide

- 16 -

sufficient evidence of a company-wide practice that affects LaSalle's hourly workers; therefore, they have demonstrated that Plaintiffs and the opt-in collective members were "similarly situated" as to this issue. *See Smith v. Family Video Movie Club, Inc.*, No. 11 C 1773, 2015 WL 1542649, at *6 (N.D. Ill. Mar. 31, 2015).

### C. Scope of Putative Collective

LaSalle argues that the putative collective must be narrowed to include only employees reporting to Defendant Miracle, who has been the Executive Director of LaSalle's South Barrington location since May 2017. LaSalle claims that this narrowing is necessary because Plaintiffs failed to offer information sufficient to support FLSA claims at any other location, for any other manager, and at any time before May 2017. The Court disagrees. Plaintiffs allege that the automatic lunch deduction policy applies to all hourly workers across all locations; LaSalle's own Response and employee handbook confirm that. (Defs.' Resp. at 3; Employee Handbook at 26-27.) And Plaintiffs have alleged sufficient personal knowledge to support a nationwide scope. By the Court's count, Bonseigneur has worked at or with at least four LaSalle facilities in Illinois (St. Charles, South Barrington, Arlington Heights, and Vernon Hills), and at least one unspecified Wisconsin facility. (Bonseigneur Dep. 160:2-162:10.) Bonseigneur also has

personal knowledge of LaSalle's company-wide policy and practices as a result of her administrative duties. (Bonseigneur Decl. ¶ 7-8.) Ruffolo worked at both the St. Charles and South Barrington locations. (Ruffolo Decl. ¶ 2.) An FLSA action does not need named plaintiffs from each of the defendant employer's many offices nationwide to merit conditional certification. That would defeat the purpose of a collective action. *See Kelly v. Bluegreen Corp.*, 256 F.R.D. 626, 631 (W.D. Wis. 2009) ("Where an apparent company-wide policy is behind the alleged FLSA violations, the plaintiff seeking certification for a company-wide class action should not be required to collect specific violations from each location or from each state before seeking authorization to provide notice to employees from all locations.") Plaintiffs have, between the two of them, personal knowledge of at least five LaSalle facilities, as well as LaSalle's national policies. This is sufficient at this stage.

LaSalle once more points to Plaintiffs' depositions as evidence that Plaintiffs have contradicted their declarations and undermined their desired scope. Again, these factual disputes are better left for step two, after discovery is complete and the members of the collective are known. *See Koch Meat Co.*, 265 F. Supp. 3d at 857; *Nehmelman v. Penn Nat. Gaming, Inc.*, 822 F. Supp. 2d 745, 751 (N.D. Ill. 2011) (at the second stage, employer

- 18 -

defendant can move to decertify the collective or divide the class into sub-collectives).

However, the Court will narrow one aspect of Plaintiffs' putative collective definition. *See Smith*, 2015 WL 1542649, at *7 (modifying FLSA collective definition); *Muir* (same); *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 472 (S.D. Tex. 2012) (noting a district court "has the power to modify an FLSA collective action definition on its own.") Plaintiffs proposed the following definition for their FLSA collective: all persons who have been employed by LaSalle as hourly wage earning (*i.e.,* non-salaried) employees for the three years preceding the issuance of the notice. (Pls. Mot. at 3, 8.) This definition is insufficient, as it does not give any indication of the common unlawful policy that Plaintiffs are alleging. All putative opt-in members must still be victims of the same common policy or policies; otherwise, the "proposed class is overbroad." *Muir* at *4 (citing *DeMarco v. Nw. Mem'l Healthcare*, No. 10 C 397, 2011 WL 3510905, at *4 (N.D. Ill. Aug. 10, 2011)). Although Plaintiffs' Complaint vaguely accuses LaSalle of "time shaving" and adjusting the clock-in and clock-out times for the purpose of paying hourly employees less, those facts are not alleged in Plaintiffs' declarations in support of FLSA conditional certification. Plaintiffs' current evidentiary submissions are limited to FLSA violations that result from

- 19 -

LaSalle's automatic meal deduction policy. Thus, the Court modifies the proposed collective as follows:

> "All persons employed by LaSalle as hourly wage earning (*i.e.,* non-salaried) employees for the three years preceding the issuance of the notice who were shorted wages based on LaSalle's lunch deduction policy."

### D. Notice

LaSalle raises several concerns about Plaintiffs' proposed notice form. LaSalle suggested, and Plaintiffs agreed, that parties should meet and discuss potential revisions. Given this agreement, the Court sees no need to rule on Plaintiffs' proposed notice form. Accordingly, Plaintiffs' requests for approval of their proposal notice form, and for authorization to send such notice to all potential opt-in plaintiffs, are denied without prejudice.

### IV. <u>CONCLUSION</u>

For the reasons stated herein, Plaintiffs' Motion (Dkt. No. 14) is granted in part and denied in part as follows:

(1) The Court conditionally certifies a collective action by Plaintiffs and similarly situated members of the collective pursuant to 29 U.S.C. § 216(b), defined as:

> "All persons employed by LaSalle as hourly wage earning (*i.e.,* non-salaried) employees for the three years preceding the issuance of the notice, who were shorted wages based on LaSalle's lunch deduction policy."

(2)   The Court orders LaSalle to produce to Plaintiffs in a usable electronic format the names, last known mailing address, email address, telephone number, and dates of employment of all putative collective members to be notified. LaSalle shall tender this information to Plaintiffs on or before March 22, 2019.

(3)   The Court denies Plaintiffs' proposed notice form, and request for authorization to send notice to all potential opt-ins, without prejudice. Parties shall file either an agreed notice form, or short briefing (five pages or less) to the Court on the matters on which they cannot agree, on or before March 22, 2019.

**IT IS SO ORDERED.**


_____
    Harry D. Leinenweber, Judge
    United States District Court

Dated: 2/28/2019